(*Circuit Court of Cook County. In Chancery.*)

### Thomas, et al.

### vs.

### Chicago Trust & Savings Bank, D. H. Tolman, et al.

1. CORPORATIONS—WHERE SAME PERSON IS PRESIDENT OF TWO CORPORATIONS—NOTICE AS PRESIDENT OF ONE CHARGEABLE TO OTHER CORPORATION. Where a person is president of two corporations having dealings with each other, both corporations are chargeable with whatever knowledge such individual receives as president of either corporation.

2. COLLATERAL SECURITIES—SALE OF—WHEN SET ASIDE. Where a pretended sale is made of collateral securities for the purpose of avoiding the defense of usury, the purchaser of such collateral with notice of the facts stands in the same situation as his vendor and cannot be regarded as a purchaser for value.

3. COLLATERAL SECURITIES—SALE OF SET ASIDE—CONDITIONS. Where a sale of collaterial securities is set aside because not *bona fide* the complainant will be required to pay all the loans secured by the collateral with legal interest.

4. CORPORATIONS—POWER TO GUARANTEE—COMMERCIAL PAPERS. A corporation is not empowered to guarantee commercial paper of another corporation.

5. CORPORATIONS—REFUND OF CONSIDERATION PAID FOR UNAUTHORIZED GUARANTY. Where a corporation guarantees the commercial paper of another corporation and such guaranty is *ultra vires*, it will be required to account for the consideration received for such guaranty.

6. COMMERCIAL PAPER — RIGHTS OF TRANSFEREE WHERE LOANS USURIOUS. Where notes are transferred with notice of the fact that the loans evidenced by the notes are usurious, such transferee takes the notes subject to the equities attaching to such notes in the hands of the former holder

Bill for accounting. Heard before Judge Murray F. Tuley. The facts are stated in the opinion.

Tuley, J.:—

This is a bill filed by complainants, seeking an accounting as to a large number of usurious transactions between complainants and the defendants, running through a period of five or six years prior to the filing of the bill, and also seeking to set aside an alleged sale of notes, mortgages, etc., amounting to some $30,000 in value, held as collateral security for the usurious loans. It is admitted that usury tainted all the numerous loans, and that the rate of two and one-half per cent. per month was the interest charged up to the year 1888, when the complainants were induced to purchase five shares of stock in the Midland Company, since which time one per cent. a month was paid the Midland Company for its guarantee, and one and one-half per cent. a month to Tolman or to the Trust & Savings Bank upon all loans as interest.

The Midland Company was orgainzed by D. H. Tolman with a capital of $100,000 for the purpose, first, of enabling Tolman to sell its stock for a profit of fifty thousand dollars; second, to force the customers of the Trust & Savings Bank to buy the stock of the Midland Company in order to obtain accommodations at the Trust & Savings Bank; third, to guarantee the notes of its stockholders and make such stockholders carry each other, and, fourth, under the name of guarantee to cover up a portion of the usurious interest charged by the Trust & Savings Bank. Some of the witnesses allege that Tolman declared it to be a wheel within a wheel "to enable the bank to beat the usury defense." Whatever was the object of Tolman, who was the chief owner of the stock of the Trust & Savings Bank and president of both corporations, I do not see how the court can escape treating them as distinct corporations.

I cannot go into a detailed statement of the many transactions between these parties. It is the old, old story of the usurer and his victim. I can only briefly announce my findings and conclusions.

*First.* That on the same day and before the filing of this

bill, the complainants caused to be made to D. H. Tolman (who was authorized to receive the same), a tender of the sum of $6,375), which was more than was due from the complainants upon all their indebtedness referred to in the bill.

*Second.* That on all the loans made and subsequent dealings in connection therewith, the complainants dealt with Tolman as president of the Chicago Trust & Savings Bank, and the bank is estopped to deny that fact so far as complainants' rights and interests as to the said usury and said securties pledged therefor are concerned.

*Third.* That as Tolman was president of both the Trust & Savings Bank and the Midland Company, whatever knowledge he had as president of the one, he had as president of the other, and both institutions are chargeable with whatever knowledge or notice he had as president of either; also that Tolman himself as an individual is also charged with such knowledge or notice.

*Fourth.* That the defendant Charles was a mere tool or instrument of Tolman, one of the many "hands" with which Tolman carried on his many usurious operations, and that the pretended sale to Charles of the collaterals within a few minutes after the tender was made was not a sale in good faith upon either side; that it was only a colorable sale and should not in equity be allowed to prejudice complainants' rights in such collaterals.

*Fifth.* That Charles took the collaterals with knowledge that Tolman's object in making the transfers was to avoid, if possible, the defense of usury, and that Charles took such collaterals with the intent to aid and assist Tolman and the two banks to defeat the complainants in the suit about to be brought to compel an accounting and the surrender of said collaterals.

*Sixth.* That Charles is not a purchaser for value in good faith and without notice of such collaterals and stands in no better position than his vendors as to such collaterals; that whatever title he took, if any, in such collaterals, he took subject to the equities between the complainants' and his, Charles', assignors.

*Seventh.* That in equity and good conscience the said col-

laterals and each of them, and the proceeds thereof, in the hands of Charles or of the receiver of this court, should be restored to the complainants upon the payment by complainants of all the moneys received upon the loans, discounts (or renewals thereof), for which the said collaterals were respectively pledged, with interest at 6 per cent. per annum on each loan discount or renewal thereof, including in ''moneys received'' such sums as were paid for expenses or otherwise for complainants' benefit. The moneys paid to Midland & Co. for guarantees should not be treated as paid for interest, or credited as against such loan discounts or renewals thereof, except as hereinafter stated in the accounting with the Midland Company.

*Eighth.* That the Midland Company was not authorized by its charter to guarantee the complainants' paper and should account to complainants for all moneys paid it for such guarantees. That the Midland Company took the notes that it now holds and which are in judgment, as stated in the bill, with full notice of the usury paid in regard to the loans, discounts (and renewals thereof) for which the same were given and holds its said judgments and notes subject to all the equities attaching to said notes in the hands of the former holder of said notes. That an account should be taken of the amount due upon said notes respectively, excluding all usury and allowing interest at 6 per cent. per annum upon each loan, discount (or renewal thereof), and said Midland Company should be charged with all sums paid to it for its guarantee on any such loan, discount (or renewal thereof) and in addition, should be charged with all moneys paid it for its guarantee upon any other loan, discount (or renewal thereof) made by said complainants of the other defendants, said Trust & Savings Bank, or said Tolman. That there should be a reference to a master in accordance with the findings now made, and this decree shall be treated as interlocutory and all other matters be reserved for further decree herein upon the coming in of said master's report.